**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO,**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **Paola Rodriguez** | : | |
| **212 South West St.** | : | |
| **Bellevue, Ohio 44811** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **Case No.:** |
| **-vs-** | : | |
| | : | |
| **Revere Plastics Systems, LLC** | : | **Judge:** |
| **39555 Orchard Hill Place** | : | |
| **Ste. 155** | : | |
| **Novi, MI 48375** | : | |
| | : | |
| **Defendant.** | : | **JURY DEMAND ENDORSED HEREIN** |
| | : | |

## COMPLAINT FOR DAMAGES

### I.    INTRODUCTION

1.    This action is a civil rights action brought by the Plaintiff against her employer for multiple acts of harassment, retaliation, and sex discrimination.  In addition to Plaintiff's claims under federal law, Plaintiff's action also includes claims under Ohio state statutory and common laws.

### II.    PARTIES AND JURISDICTION

2.    At all times relevant herein, Plaintiff, Paola Rodriguez ("Plaintiff" and/or "Ms. Rodriguez"), has resided in the County of Huron, State of Ohio.

3.    At all times relevant herein, Defendant, Revere Plastics Systems, LLC (hereinafter referred to as "Revere") is an entity authorized to do business in the State of Ohio.

4.    Revere employs four (4) or more employees with the State of Ohio, and therefore Defendant Revere is an "employer" as defined by the Ohio Revised Code Section 4112.01(A)(2).

5.    At all times relevant herein, Plaintiff was a member of a protected class on the basis of her sex/gender.

6. This Court has jurisdiction over the claims under 28 U.S.C. § 1331 because the action arises under the laws of the United States and involves federal questions based on Title VII. This Court also has pendent jurisdiction of state law claims pursuant to 28 U.S.C. § 1367.

7. Jurisdiction is proper as the Causes of Actions are brought pursuant to the laws of the United States and/or utilize the same core of operative facts and is, therefore, subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8. Venue lies in the Northern District of Ohio because the facts leading to the dispute between the parties occurred within this District, and the Defendant is doing business in this District.

## III. GENERAL ALLEGATIONS

9. Ms. Rodriguez was hired by Revere on August 10, 2015 as a Pump Line Operator. She was promoted to Quality Auditor in 2016. On June 21, 2017, Rodriguez was promoted to Team Leader on June 21, 2017. On February 7, 2018, she was promoted to Quality Supervisor/Liaison. On April 19, 2021, her position was changed to Quality Supervisor/Liaison.

10. Between the summer of 2019 through present, Ms. Rodriguez has been the victim of harassment, discrimination and retaliatory behavior from fellow colleagues and her supervisors.

11. The initial sexual harassment by colleague Carlos Garcia ("Mr. Garcia") occurred in the summer of 2019, two days after Mr. Garcia's start date with Revere, at a company-sponsored employee food recognition event. Mr. Garcia grabbed Ms. Rodriguez's elbow whenever he greeted her. On a later date in the summer of 2019, Mr. Carlos grabbed Ms. Rodriguez's shoulder. Ms. Rodriguez informed Mr. Garcia that she was not comfortable with him touching her and not to do it. Ms. Rodriguez informed her direct supervisor, Casey Leow ("Mr. Leow"), of these events.

12. Sometime thereafter, in the summer of 2019, Mr. Garcia harassed Ms. Rodriguez again in his office when Ms. Rodriguez went to his office to assist him with accessing the IQMS system at his request. Ms. Rodriguez was facing away from the process engineer in the room, Shawn Carter, facing towards Mr. Garcia and Mr. Garcia's computer. Mr. Garcia reached out to touch Ms. Rodriguez. Ms. Rodriguez pulled away shaking her head in a "no" motion.

13. On August 14, 2019, Mr. Garcia continued to harass Ms. Rodriguez when he replied to Ms. Rodriguez's professional email asking her "R U mad?" without any reason.

14.     Later that day, on August 14, 2019, Mr. Garcia stopped Ms. Rodriguez on the production floor and said "Do you not like me? You are being too serious. Smile."

15.     On August 29, 2019, Ms. Rodriguez made a complaint to her supervisor Roberta "Bobbi" Herr ("Ms. Herr") that Mr. Garcia keeps requesting her to do his job. Ms. Rodriguez also informed Ms. Herr that Mr. Garcia was unprofessional toward her.

16.     On September 26, 2019, Mr. Garcia called Ms. Rodriguez's desk phone for an unknown reason. Mr. Garcia would consistently email or approach Ms. Rodriguez if she did not answer him. If a conversation ended between Mr. Garcia and Ms. Rodriguez, Mr. Garcia would continue to pursue it.

17.     On October 24, 2019, Mr. Garcia approached Ms. Rodriguez on the floor and asked "Why don't you smile more often? Are you mad at me?"

18.     On November 11, 2019, Mr. Garcia asked Ms. Rodriguez out to a football game. Ms. Rodriguez politely declined. Mr. Garcia continued to pursue the conversation.

19.     On November 26, 2019, Mr. Garcia reached out to touch Ms. Rodriguez during a staff meeting. Mr. Garcia stared at her during the entire meeting. Later, Mr. Garcia sends Ms. Rodriguez an email message through work email.

20.     On January 9, 2020, Mr. Garcia called Ms. Rodriguez on her cell phone. Ms. Rodriguez informed Mr. Garcia that she was not at work and gave him her work number. He asked Ms. Rodriguez if she is special and told her to be nice to him.

21.     On January 13, 2020, Mr. Garcia continues to harass Ms. Rodriguez by texting her work phone number making sure that she did not give him a fake work cell phone number.

22.     On January 16, 2020, Mr. Garcia continues to send Ms. Rodriguez text messages.

23.     On January 17, 2020, Mr. Garcia called Ms. Rodriguez's desk phone. She did not answer because she was on a conference call. Mr. Garcia text messaged Ms. Rodriguez when she did not answer the call.  Mr. Garcia text messaged Ms. Rodriguez and offered an apology from their earlier phone call in which he made fun of her indicating her lack of knowledge due to her age.

24. On February 11, 2020, Ms. Rodriguez reports the harassment to Human Resources. She printed copies of text messages and conversations and turned them into Stacey (Blosser) Coopler ("Ms. Coopler").

25. On February 12, 2020, Ms. Coopler reported to Ms. Rodriguez that the harassment had been addressed. She said that Ryan Skinner ("Mr. Skinner"), General Manager of Revere, is aware of the situation and will be having a conversation with Mr. Garcia.

26. On March 27, 2020, Mr. Garcia called Ms. Rodriguez and asked her if her second job at Texas Roadhouse was hiring. He had been at the restaurant previously and sat at the bar staring at Ms. Rodriguez.

27. On May 5, 2020, Timothy Bollencher ("Mr. Bollencher) informed Ms. Rodriguez that Mr. Garcia had a conversation with him in which Mr. Garcia was making remarks about Ms. Rodriguez. Mr. Garcia then sent Mr. Bollencher an email about Ms. Rodriguez titled "trouble." In the email, Mr. Garcia called Ms. Rodriguez "short." Ms. Rodriguez complained to her direct supervisor, Mr. Leow, who requested Ms. Rodriguez send him the email. Ms. Rodriguez reported the incident to Jen Galbraith ("Ms. Galbraith") in Human Resources. Ms. Rodriguez complained further of Mr. Garcia's continued harassment and retaliation toward her. Ms. Galbraith then contacted Ms. Rodriguez to gather information about the incident. Ms. Rodriguez was offered the solution that Mr. Garcia would be "talked to." Ms. Rodriguez replied that she did not accept hat solution.

28. On May 5, 2020 at 11:45 a.m., Ms. Rodriguez had a meeting with Ms. Galbraith. Ms. Rodriguez found out that there was no record of the previous investigation of Mr. Garcia or that General Manager, Mr. Skinner, even addressed Mr. Garcia's behavior with him. Ms. Galbraith and Ms. Rodriguez found the documents Ms. Rodriguez had turned over to previous Human Resources, but there was no documentation that an investigation had been conducted.

29. On May 12, 2020, Ms. Rodriguez met with Colleen, an outside investigator, at 9:15 am for the investigation.

30. When the investigation concluded, Mr. Garcia continued working for Revere. He was not permitted to be alone in a room or contact Ms. Rodriguez.

31. Mr. Garcia was removed from the facility. Ms. Rodriguez later found out that he was working at a sister plant. At a later date, Mr. Garcia came back to the Clyde facility, Ms. Rodriguez's plant, to work on a press. Ms. Herr told Ms. Rodriguez at a staff meeting so Ms. Rodriguez would not go around the press area.

32.     On September 13, 2020, Ms. Rodriguez reported a sexual harassment incident that had occurred between her auditor, Amanda Peck ("Ms. Peck"), and two of his employees. David Holmes brushed of the incident.  He winked at Ms. Rodriguez in front of Ms. Pick and asked Ms. Rodriguez "what do you want me to?" Ms. Rodriguez said that he should do something and that she was going to Human Resources.

33.     On October 12, 2020, Jennifer Postell ("Ms. Postell") informed Ms. Rodriguez of her concerns with second shifts team not correctly handing the situation with fusion rings.  Tyler Bivens had been doing multiple tasks, attempting to handle this situation in his area simultaneously. Ms. Rodriguez was concerned about conversations with the second shift production supervisor.

34.     On October 12, 2020, Ms. Rodriguez met with her second shift team to help and let them know that she or Ms. Peck would be staying late to assist them with any questions and evaluate where improvements were needed.

35.     On October 12, 2020, Ms. Rodriguez met with Ms. Herr to discuss an action plan for Mr. Bollencher.  Ms. Rodriguez suggested a 90-day action plan given his repeat performance issues.

36.     On October 19, 2020, Ms. Rodriguez met with Mr. Bollencher and his shift about the findings in the training matrix not accurately reflecting his shifts current capacities and evaluations on his team performance.

37.     On October 20, 2020, Ms. Rodriguez met with Mr. Bollencher to have a coaching conversation and present his action plan to him. This was documented in Paylocity. Ms. Rodriguez made him aware that he was on a 90-day probation.

38.     On October 22, 2020, Ms. Rodriguez followed up with Mr. Bollencher on his career goal plan and 30-day review deadline. Ms. Rodriguez provided him training sheets and emailed him the documents that were needed for improvement in his work.

39.     On October 28, 2020, Mr. Bollencher requested a meeting with Ms. Herr and Ms. Rodriguez.  He stated that his team was upset about the way Ms. Rodriguez addressed them.  He stated that Ms. Rodriguez was harsh and rude to his team. Then he tried to explain Ms. Rodriguez's behavior to them. He also told Ms. Herr that Ms. Rodriguez did not know how to speak to people properly. None of these statements were unfounded and unsubstantiated.

40.     Ms. Rodriguez presented facts to Ms. Herr to defend herself, which were dismissed by Ms. Herr. Ms. Herr said that Ms. Rodriguez Mr. Bollencher had

"different managing styles." Mr. Bollencher then requested a meeting with Ms. Herr and Mr. Bollencher's team.

41.     On October 29, 2020, Ms. Rodriguez took vacation time. She stressed that she was disappointed after being dismissed as Mr. Bollencher's allegations were unfounded and unsubstantiated and that it impeded moving in the right direction.

42.     Between October 29, 2020 – November 20, 2020, Ms. Rodriguez followed up two times with Ms. Herr to see if she had the meeting with Mr. Bollencher and his team.

43.     At the second meeting, there was an incident of misconduct by Chelsey Reilley ("Ms. Reilley), who reports to Ms. Herr, being rude in the meeting to Ms. Rodriguez. Ms. Rodriguez addressed the situation with Mr. Bollencher in the room as she had previously asked for coaching and it was not provided.  Ms. Herr again dismissed Ms. Rodriguez and implied that Ms. Rodriguez deeply disliked her shift.

44.     On or about November 9, 2020, Ms. Rodriguez followed up with Ms. Herr as to if she had the meeting with the second shift.

45.     On November 11, 2020, Ms. Herr followed up with Ms. Rodriguez on the findings from the meeting. The second shift did not have issues with Ms. Rodriguez being harsh or rude. There were issues about not wanting their teammates to fail, attitude from Chelsey Reilly, and Ms. Reilly thinking she was singled out in the group meeting. With further discussion, it was determined that Ms. Reilly took things personally and Ms. Herr informed Ms. Rodriguez to address issues with Ms. Reilly individually before a team meeting.

46.     On November 20, 2020, Ms. Rodriguez was harassed by Mr. Bollencher for following up with him regarding an issue brought to her attention by Ms. Postell. Mr. Bollencher became hostile, aggressive and threatening toward Ms. Rodriguez. Ms. Rodriguez repeatedly told Mr. Bollencher to calm down, tried to explain the situation to him and answer his questions. He did not calm down and approached Ms. Rodriguez with an elevated voice. She repeatedly told him to calm down. Mr. Bollencher was blocking the exit so Ms. Rodriguez could not leave. Ms. Rodriguez disengaged him by looking up towards the ceiling. Mr. Bollencher slammed the door on his way out saying he was going to talk to Ms. Herr. Ms. Rodriguez took a moment to stop from shaking. She then proceeded to Ms. Herr's office.  She passed Mr. Bollencher who was sitting outside Ms. Herr's office in a chair. Ms. Rodriguez went to speak to Ms. Herr who was engaged in a computer training. Ms. Rodriguez notified Ms. Herr that she and Mr. Bollencher needed to speak to her. After that, Mr. Bollencher approached Ms. Rodriguez downstairs to find out how to print ford labels.

47.     Once in Ms. Herr's office, Ms. Rodriguez politely asked Mr. Bollencher if he would like to start the conversation. He started harassing, bullying and being insubordinate towards Ms. Rodriguez by raising his voice and using his two fingers to point at her. Mr. Bollencher proceeded to continue this behavior for 5 to 10 more minutes. Sitting in the corner, Ms. Rodriguez was silent; her supervisor was not doing anything. Ms. Rodriguez spoke up and started stating facts against his accusations. Ms. Herr interrupted Ms. Rodriguez saying that her and Mr. Bollencher were just knit picking. Ms. Herr allowed Mr. Bollencher to yell at Ms. Rodriguez and bully her, but Ms. Rodriguez was stopped from defending herself.

48.     In this meeting, Mr. Bollencher made false accusations against Ms. Rodriguez. He said that no one likes her, working with her or how she speaks to them. In this meeting, Ms. Rodriguez found out that Mr. Bollencher had been withholding reports from his team. This indicated to Ms. Rodriguez that some of the haste from Ms. Reilley and the team derived from Mr. Bollencher. Ms. Rodriguez is unable to correct issues if she is not aware of them. Ms. Herr dismissed Ms. Rodriguez's concerns of Mr. Bollencher's behavior throughout the meeting. When Ms. Rodriguez told Ms. Herr that that these issues needed addressed, Mr. Bollencher stated: "I am not a little kid that needs to be told when to calm down" while looking at Ms. Rodriguez. At that point, Ms. Rodriguez was crying in frustration. Ms. Rodriguez defended herself through the meeting with supporting facts that any past issues Mr. Bollencher had with Ms. Rodriguez were addressed. He continued to badger Ms. Rodriguez with past issues. There were no fundamentals in his allegations nor was his behavior addressed by Ms. Herr.

49.     On November 23, 2020, Ms. Rodriguez made a complaint to Ms. Herr that she was not comfortable with how Ms. Herr addressed the issues during their meeting on November 20, 2020. Ms. Rodriguez indicated that she did want to keep Ms. Herr later that day, nor did she want to burst out at Mr. Bollencher during their meeting. Ms. Herr responded by. Stating that Ms. Rodriguez should have screamed and lost her temper condoning that sort of behavior and said it would have been for the best.

50.     On November 23, 2020, Ms. Rodriguez then made a complaint regarding Mr. Bollencher's threatening behavior toward her on November 22, 2020 to Ms. Galbraith in Human Resources.

51.     On November 24, 2020, Ms. Rodriguez was exposed at work to Covid-19 and sent home for 14-days unpaid. Ms. Rodriguez's follow up meeting with Ms. Herr was cancelled. Ms. Rodriguez was informed that her holiday pay was going to be taken unless she used vacation for the day before and after. The rest of Ms.

Rodriguez's teammates were offered to work from home, while Ms. Rodriguez was not.

52.     On December 7, 2020, when. Ms. Rodriguez returned to work, Ms. Herr asked Ms. Rodriguez if Ms. Galbraith had contacted her, that she waiting to hear from her, and that she would follow up if needed.

53.     On December 10, 2020, Ms. Galbraith and Ms. Rodriguez scheduled a meeting for December 11, 2020 at 2:30 p.m.

54.     On December 11, 2020, Ms. Rodriguez met with Ms. Galbraith because nothing had been addressed yet.

55.     From December 11, 2020 on, Ms. Rodriguez spoke with Ms. Herr in attempt to address Mr. Bollencher's neglected workload. Ms. Rodriguez was dismissed for lack of documentation, even though there was documentation in Ms. Rodriguez's old work email in which she could no longer access.

56.     Mr. Bollencher mislabeled door racks, which cost the company to go into CS1. Ms. Rodriguez asked Ms. Herr what to do or how she should address this issue and Ms. Herr responded that it would be up to Ms. Rodriguez. Ms. Rodriguez did not want to engage in correcting Mr. Bollencher for fear of retaliation.

57.     On December 13, 2020, Ms. Rodriguez turned in documentation to Ms. Galbraith regarding continued issues with Mr. Bollencher.

58.     On December 14, 2020, Ms. Galbraith told Ms. Rodriguez that with the information she gathered, there was tension between Mr. Bollencher and Ms. Rodriguez. According to Ms. Galbraith, this was because of different managing styles between Mr. Bollencher and Ms. Rodriguez. Ms. Rodriguez informed Ms. Galbraith that she felt it was his behavior that needed to be addressed; he was hostile and aggressive to his superior (Ms. Rodriguez), and she felt threatened.

59.     On December 15, 2020, Ms. Galbraith asked Ms. Rodriguez to write a statement regarding Ms. Rodriguez's complaint concerning Mr. Bollencher being hostile and aggressive toward Ms. Rodriguez.

60.     The week of December 21, 2020, Ms. Rodriguez had a confrontation with Mike Thornburg ("Mr. Thornburg"), due to the bartender label program expiring. Jenifer Missler ("Ms. Missler"), who reports to Ms. Rodriguez, notified Ms. Rodriguez that the program to make labels expired and that she called IT for assistance. Mr. Thornburg answered the call and was coming to look at it. When Mr. Thornburg arrived, he asked Ms. Missler about the computer located downstairs and attempts to set it up. Once it was loaded, he asked Ms. Misser if she knew how to make labels. She answered no. Ms. Rodriguez attempted to ask him

how he was trying to print the labels and informed him that this computer was not to be used. He became irritated, began slamming his hand down on the computer saying that they needed to listen to him. Ms. Rodriguez gave him time to go upstairs and check if the computers were working. When Ms. Rodriguez walked in, she heard him telling Shawn Kilgore ("Mr. Kilgore") that Ms. Missler and Ms. Rodriguez do not know how to listen. Mr. Thornburg spoke peacefully to Mr. Kilgore but not to female colleagues. When Ms. Rodriguez approached him, Mr. Thornburg, in an arrogant tone, said: "I do not appreciate how you were trying to start an argument with me downstairs." Ms. Rodriguez told him that he needed to watch how he spoke to people and that it was not professional. Ms. Rodriguez could see he was frustrated. She informed him that they could resolve it with Human Resources. Ms. Rodriguez could only find General Manager, Mr. Skinner. She reported the incident to him.

61.	On or about January, 2021, Ms. Rodriguez had a meeting in Ms. Herr's office. During this meeting, Ms. Herr informed Ms. Rodriguez that General Manager, Mr. Skinner, Ms. Galbraith and herself had spoken about what would make Ms. Rodriguez happy and what was best for her. Ms. Herr stated that Mr. Skinner wanted to have a meeting with Mr. Bollencher and Ms. Rodriguez to help alleviate the ongoing situation.  Mr. Herr further indicated that Mr. Skinner was going to offer Ms. Rodriguez a special work task. They wanted Ms. Rodriguez to move into the supplier quality role. Ms. Rodriguez refused explaining that role is not stable, Mr. Skinner is not aware of all the facts, and that she should not be moved because she was doing her job. Ms. Herr informed Ms. Rodriguez that she could not protect her from the culture in the factory. Ms. Rodriguez responded that she did not need protection from the "culture" of men who did not want to listen to a woman younger than them because they could not be held accountable for their behavior.

62.	On January 18, 2021, Ms. Missler reported to Ms. Rodriguez that Mr. Bollencher was hostile towards her. Ms. Missler had Ms. Rodriguez write a statement which was turned in to Ms. Herr.  A meeting was scheduled with Human Resources for January 26, 2021.

63.	On January 24, 2021, Ms. Rodriguez's January 26th follow up meeting with Human Resources was cancelled. The follow up meeting was never rescheduled. Ms. Rodriguez was being dismissed.

64.	On January 25, 2021, Ms. Rodriguez made a complaint of insubordination to Ms. Herr regarding Mr. Bollencher not listening to her and continuing to do as he wished. During this conversation, Ms. Rodriguez was told that Mr. Bollencher had been coached and that Ms. Galbraith had not communicated with Ms. Herr.

Ms. Herr stated: "I feel excluded. I don't know anything you reported to Jenifer Galbraith." Ms. Rodriguez's complaints were not being addressed.

65.     On January 26, 2021, Ms. Rodriguez requested vacation for the next three days. These were not approved. Mr. Bollencher's emergency vacations during this investigation were all accepted.

66.     On January 27, 2021, Ms. Rodriguez met with Ms. Galbraith and Ms. Herr informing them that she was not content with how the situation was handled. Any changes to her title or responsibilities could be provided in an official document with supporting documentation.  She requested that documentation be provided to her attorney.

67.     During the week of January 28, 2021, Ms. Rodriguez had a meeting with Ms. Galbraith and Ms. Herr to discuss the results of the investigation. Ms. Rodriguez was told that Mr. Bollencher was resigning and his last day would be February 12th, 2021.

68.     On February 5, 2021, there was a journal entry by Ms. Herr documenting that Mr. Bollencher was insubordinate and that Ms. Rodriguez's allegations of hostile work environment, bullying and retaliation were not substantiated. Ms. Galbraith added a comment about respectful workplace training.

69.     Between February 1st through February 12th, 2021, Mr. Bollencher did not communicate with Ms. Rodriguez other than by sending her reports.  Mr. Bollencher would not send. He ignored Ms. Rodriguez's instructions to complete his trainings, paperwork and other job duties when requested by Ms. Rodriguez. Ms. Rodriguez continued to inform Ms. Herr of the continued insubordination.  Mr. Bollencher's insubordinate behavior.  Mr. Bollencher left early every Friday. If Ms. Rodriguez or Ms. Missler left early, there would be repercussions. However, workplace misconduct by men was permitted to occur without repercussions.

70.     On February 15, 2021, a meeting was set up by Ms. Galbraith to discuss the resolution of Ms. Rodriguez's complaint on September 13, 2020 of sexual harassment toward her auditor, "Ms. Peck." In this meeting, Ms. Rodriguez was told that she was blowing things out of proportion. Since Mr. Holmes had not heard of these issues, Ms. Rodriguez was told that her complaints were not credible. Mr. Holmes accused Ms. Rodriguez of following him around, deeming that she is not capable of preforming her job. He slandered Ms. Peck with accusations of turning people against him. He offered no proof. The culture at Revere allows men to commit workplace misconduct without discipline. In 2018, Mr. Holmes was able to ban someone from working in the area. Ms. Rodriguez was forced to demote and move positions due to Mr. Holmes paranoia.

71.     On February 22, 2021, Mr. Bollencher came in early on unapproved hours. Ms. Herr informed Ms. Rodriguez that Mr. Bollencher was communicating with Human Resources and scheduling interviews for his replacement. Ms. Herr indicated that Ms. Galbraith gave him permission. Ms. Rodriguez called Ms. Galbraith and asked why he was permitted to schedule interviews when he still was not doing his job. His job responsibilities were not being completed. He was coming in early to conduct interviews but then leaving early without authorization. Ms. Rodriguez was told to be polite and to work as a team with him, despite the lack of communication from him. Ms. Rodriguez asked how they were to work with each other when Human Resources did not share this information with her initially. Ms. Galbraith asked Ms. Herr why Mr. Bollencher was not getting repercussions. Ms. Herr was nothing but excuses. She indicated: "What did she want her to do? Write him up?"

72.     Upon information and belief, Ms. Rodriguez believes she was set up for failure.

73.     Subsequent to the conclusion of the aforementioned investigation, Ms. Rodriguez has been the victim of harassment, discrimination and retaliatory behavior from fellow colleagues and her supervisors.

74.     Ms. Rodriguez has suffered and/or is still suffering considerable harassment, discrimination and/or retaliation for reporting a hostile work environment in her role and/or employment with Revere.

IV.     **CAUSES OF ACTION**

A.  **First Claim – Title VII Violations**

75.     The preceding paragraphs are incorporated by reference as if fully restated herein.

76.     Title VII of the Civil Rights Act of 1964, U.S.C. Section 2000e et seq. prohibits discrimination in employment based on the basis of sex.

77.     Defendant Revere is an "employer" as defined under Title VII.  Plaintiff is an at-will employee of Defendant within the meaning of Title VII.

78.     During the course of Plaintiff's employment Plaintiff has been subject to unwelcome harassment, retaliation, discrimination and other disparate treatment based on her gender/sex by Defendant all of which were based on Plaintiff's gender (female) and affected the terms and conditions of her employment.

79.     Defendant's unwelcome, harassing, retaliatory and/or discriminatory conduct alleged above was severe and/or pervasive and created, and continues to

create, a hostile, offensive work environment for Plaintiff based on Plaintiff's gender (female) and/or unreasonably interfered with her employment and work performance.

80. Plaintiff complained and protested the foregoing actions to Defendant. No action, other than retaliating against Plaintiff, has been taken.

81. The unwelcome harassment, retaliation, discrimination and other disparate treatment was sufficiently severe or pervasive to affect the terms, conditions and privileges of employment and matters directly and indirectly relating to Plaintiff's employment and prevented Plaintiff from performing her job, thus altering the terms and conditions of Plaintiff's employment and created an intimidating, hostile, offensive and abusive working environment that affected seriously the psychological wellbeing of Plaintiff.

82. At all relevant times, Defendant acted with malice and reckless indifference to the statutorily protected rights of Plaintiff in violation of Title VII of the Civil Rights Act of 1964.

83. By reason of the foregoing acts and omissions of Defendant in violation of Title VII, Plaintiff has suffered damages in an amount exceeding Seventy-Five Thousand Dollars and 00/100ths ($75,000.00), which damages continue to accrue, for any and all emotional distress, loss of reputation, humiliation, embarrassment, loss of self-esteem, extreme frustration, sums of Back Pay, and Compensatory and Punitive Damages, plus an award of reasonable attorneys' fees.

## B. Second Claim – Gender Discrimination

84. The preceding paragraphs are incorporated by reference as if fully restated herein.

85. This gender discrimination took the form of disparate treatment of Ms. Rodriguez when compared to similarly situated male employees, as well as the form of disparate impact discrimination.

86. The actions of Defendant as alleged herein constitutes discrimination against Ms. Rodriguez based upon her sex in violation of R.C. 4112.02(A) with respect to the tenure, terms, conditions, privileges of employment, and other matters directly and/or indirectly related to her employment, by treating her differently than similarly-situated co-workers, and by other means to be determined at trial.

87. The conduct of Defendant was done maliciously and/or intentionally or with reckless disregard for the rights of Ms. Rodriguez.

88. Defendant's conduct as herein alleged constituted a conscientious disregard for the rights and/or safety of Ms. Rodriguez that had a great probability of causing,

and did cause, substantial damage to her, thereby rendering Defendant liable for punitive damages.

89.     Defendant's discriminatory conduct was motivated by Ms. Rodriguez's gender.

90.     Defendant's discrimination created and perpetuated a hostile workplace environment of harassment, discrimination, and retaliation that a reasonable person would find to be hostile, intimidating, offensive and abusive.

91.     Ms. Rodriguez was offended by the harassment, discrimination, and retaliation and, further, perceived the workplace environment created and perpetuated by Defendant to be hostile, intimidating, offensive and abusive.

92.     Defendant's creation of a hostile workplace environment of harassment and discrimination altered the conditions of Ms. Rodriguez's employment.

93.     Defendant's creation of a hostile workplace environment of harassment and discrimination interfered with Ms. Rodriguez's work performance.

94.     Ms. Rodriguez and other employees reported the hostile work environment to her supervisor but no corrective action was taken.

95.     As a direct and proximate result of Defendant's discriminatory conduct as alleged herein, Ms. Rodriguez has been damaged in an amount exceeding Seventy-Five Thousand Dollars and 00/100ths ($75,000.00).

96.     As a further direct and proximate result of Defendant's conduct, Ms. Rodriguez has incurred severe economic damages (including, but not limited to loss of income and other benefits), pain and suffering, humiliation, severe emotional distress, and the loss of enjoyment of life for which Ms. Rodriguez asserts a claim against Defendant, pursuant to applicable law and/or as authorized under R.C. 4112.99 in excess of Seventy-Five Thousand Dollars and 00/100ths ($75,000.00).

97.     Each and every one of Defendant's discriminatory actions and omissions complained of herein was intentional, motivated by malice and ill will and/or done with reckless disregard of Ms. Rodriguez's rights, thereby entitling her to recover punitive damages.

## C.  Third Claim – Intentional and/or Negligent Infliction of Emotional Distress

98.     The preceding paragraphs are incorporated by reference as if fully restated herein.

99.     Defendant owes a duty to Ms. Rodriguez to refrain from intentional and/or negligent injury. The wrongful conduct of Defendant, as alleged herein, has

resulted in and/or has continued to result in the intentional and/or negligent infliction of emotional distress to Ms. Rodriguez for which Defendant is liable.

100.    Defendant has breached its duty to Ms. Rodriguez based on their conduct, actions, and/or inactions as alleged herein, and Defendant intentionally and proximately caused injury to Ms. Rodriguez in the form of embarrassment, mental anguish, loss of reputation, loss of self-esteem, and harm to Ms. Rodriguez's relationship with her family, and other emotional distress resulting in physical injury in form of adverse health effects. Said injuries caused extreme pain and suffering in the past and will likely continue to cause pain and suffering in the future.

101.    Defendant's conduct as alleged herein was and/or is outrageous and has proximately caused damage to Ms. Rodriguez arising from the intentional infliction of serious emotional distress upon her for which Ms. Rodriguez is entitled to judgment and recovery under Ohio law against Defendant.

102.    Defendant's conduct as described herein was willful, malicious, spiteful, with ill will, and/or a reckless disregard for Ms. Rodriguez's legal rights.

103.    As a direct and proximate result of Defendant's conduct, Ms. Rodriguez has been damaged in an amount in excess of Seventy-Five Thousand Dollars and 00/100ths ($75,000.00).

## D.  Fourth Claim – Retaliation

104.    The preceding paragraphs are incorporated by reference as if fully restated herein.

105.    Ms. Rodriguez engaged in protected activity, by reporting the hostile work environment and discrimination by Defendant, and by providing requested information regarding her supervisor.

106.    Due to Ms. Rodriguez's engagement in said protected activity, Ms. Rodriguez has been subjected to continuous and harmful unlawful conduct, including but not limited to, being treated with contempt, being subjected to on-going scrutiny by her supervisor, failure to promote, damage to her reputation.

107.    As a result of Defendant's wrongful conduct, the Ms. Rodriguez has suffered damages, and will likely continue to suffer severe economic, psychological, physical and emotional distress and is entitled to judgment as a matter of law pursuant to R.C. § 4112, et seq.

108.    Defendant's conduct shows a conscious disregard for the rights and/or safety of Plaintiff, and had and/or has a great probability of causing, and did cause,

Page **14** of **17**

substantial damages to Ms. Rodriguez, thereby rendering Defendant liable for punitive damages.

109.    As a direct and proximate result of Defendant's conduct, Ms. Rodriguez has been damaged in an amount in excess of Seventy-Five Thousand Dollars and 00/100ths ($75,000.00).

**E.  Fifth Claim – Ohio Public Policy Tort**

110.    The preceding paragraphs are incorporated by reference as if fully restated herein.

111.    Defendant's actions against Ms. Rodriguez is retaliatory, motivated in part by Ms. Rodriguez's gender and her complaints of harassment and discrimination.

112.    There exists a clear public policy manifested in R. C. Chapter 4112 prohibiting discrimination on the basis of gender and prohibiting retaliation for complaining of discrimination and reporting harassment and discrimination.

113.    Defendant's retaliatory actions jeopardize one or all of the clear public policies described in the preceding paragraph and, further, were motivated by a desire to abrogate one or all of these clear public policies.

114.    Ms. Rodriguez is entitled to recover against Defendant in tort as provided by the Ohio Supreme Court in Kulch v. Structural Fibers (1997), 78 Ohio St. 3d 134.

115.    Defendant lacks an overriding legitimate business justification for its treatment of Ms. Rodriguez.

116.    As direct and proximate result of Defendant's tortuous actions, Ms. Rodriguez has been embarrassed and humiliated, and Ms. Rodriguez has and continues to suffer loss of substantial earnings.

117.    Defendant's actions were in reckless disregard of Ms. Rodriguez's rights and/or motivated by malice and ill will, thereby entitling Ms. Rodriguez to recover punitive damages.

**F.  Seventh Claim – Hostile Work Environment**

118.    The preceding paragraphs are incorporated by reference as if fully restated herein.

119.    As set forth *supra,* pursuant to federal law, Ms. Rodriguez belongs to a protected group as a female (gender).

120.    As set forth more fully above, Ms. Rodriguez has been subjected to retaliation, discrimination, and unwelcome harassment.

121.    Upon information and belief, the retaliation, discrimination, and harassment was based on Plaintiff's sex.

122.    As set forth more fully above, Defendant unwelcome, harassing, retaliatory and/or discriminatory conduct was severe and/or pervasive and created, and continues to create, a hostile, offensive work environment for Ms. Rodriguez based on Ms. Rodriguez's gender (female) and/or unreasonably interfered with her employment.

123.    As set forth more fully above, Defendant ratified the conduct of its employees, agents and/or authorized representatives.

124.    By reason of the foregoing acts and omissions of Defendant, Ms. Rodriguez has suffered damages in an amount exceeding Seventy-Five Thousand Dollars and 00/100ths ($75,000.00), which damages continue to accrue for any and all emotional distress, loss of reputation, humiliation, embarrassment, loss of self-esteem, extreme frustration, sums of Back Pay, and Compensatory and Punitive Damages, plus an award of reasonable attorneys' fees

**WHEREFORE**, Plaintiff prays for judgment against Defendant, jointly and severally, as follows:

1.    For actual, compensatory and consequential damages in excess of Seventy-Five Thousand Dollars and 00/100 ($75,000.00);

2.    For punitive damages as a result of the wrongful acts complained of herein in excess of Seventy-Five Thousand Dollars and 00/100 ($75,000.00);

3.    That the Court issue an Order restrain and enjoin Defendant from continuing their unlawful employment practices;

4.    For reasonable attorney's fees in an amount to be determined; and

5.    For costs and other such relief, in law or equity, as this Court deems just and proper, including but not limited to pre-judgment and post judgment interest.

## **JURY DEMAND**

Ms. Rodriguez hereby demands a jury trial for all issues contained in this complaint.

Respectfully submitted,

/s/ Jessica A Barwell
**WESP BARWELL, L.L.C.**
Jessica A. Barwell (0088716)
Gregory P.  Barwell (0070545)
Jud R. Mauger (0063375)
Attorneys at Law
100 E. Broad Street, Suite 2350
Columbus, Ohio 43215
P+F: (614) 456-0488
Email:  jbarwell@wesplaw.com
Email:  gbarwell@wesplaw.com
Email:  jmauger@wesplaw.com

*Attorneys for Plaintiff*